UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

H & T Fair Hills, Ltd., Mark Hein, Debra Hein, Nicholas Hein, Norman Zimmerman, Donna Zimmerman, Steven Wherry, Valerie Wherry, Robert Ruebel, Mary Ruebel and Larry Ruebel, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

Alliance Pipeline L.P., also known as Alliance USA,

    Defendant.

Civ. No. 19-1095 (JNE/BRT)

ORDER ON DEFENDANT'S MOTION TO COMPEL REMOTE DEPOSITIONS

---

Anne T. Regan, Esq., Brian William Nelson, Esq., Gregory S. Otsuka, Esq., Michael R. Cashman, Esq., and Richard M. Hagstrom, Esq., Hellmuth & Johnson; Drew R. Ball, Esq., and Steve McCann, Esq., Ball & McCann, P.C., counsel for Plaintiffs.

Haley L. Waller Pitts, Esq., Nicole M. Moen, Esq., Patrick D. J. Mahlberg, Esq., and Samuel Andre, Esq., Fredrikson & Byron, PA, counsel for Defendant.

---

This matter came before the Court on Defendant's Motion to Compel Remote Depositions pursuant to Fed. R. Civ. P. 30(b)(4). (Doc. No. 125.) For the reasons set forth below, Defendant's motion is granted in part and denied in part without prejudice.

## DISCUSSION

Federal Rule of Civil Procedure 30(b)(4) provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." As recently stated *In re Broiler Chicken Antitrust Litig.*, "[c]ourts

have long held that leave to take remote depositions pursuant to Rule 30(b)(4) should be granted liberally." No. 1:16-CV-08637, 2020 WL 3469166, at *7 (N.D. Ill. June 25, 2020). Rule 30(b)(4) does not explicitly state that there needs to be 'good cause' for the Court to grant a motion. Instead, "[Rule 30(b)(4)] appears to leave it to the court's broad discretion over discovery to determine whether there is *a legitimate reason* to take a deposition by telephone or other remote means under all the facts and circumstances of a given case." *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 (emphasis added). Courts determine whether to allow a remote deposition with "a careful weighing of the reasons put forth by the proponent of the remote deposition and the claims of prejudice and hardship advanced by the party opposing the deposition." *Id.*

Health concerns created by the COVID-19 pandemic can be a legitimate reason to take a deposition by remote means. *See id.* "[T]he hardship that would be caused to [witness(es) and . . . counsel] by an in-person deposition is obvious." *Grupo Petrotemex, S.A. de C.V. v. Polymetrix AG*, No. 16-CV-2401 (SRN/HB), 2020 WL 4218804, at *2 (D. Minn. July 23, 2020) (quotations omitted). In the deposition setting, counsel taking the deposition are orally asking questions. The witness is testifying orally. Attorneys defending the deposition are orally making objections. "Even with the protection of masks and social distancing, an in-person deposition generally requires the participants to sit in a shared enclosed space for prolonged periods of time." *Id.*

The concerns about the risks of transmission of COVID-19 to participants in an in-person deposition setting are supported by the science. Courts have "cited to an academic article for the uncontroversial proposition that the minimum

distance to prevent transmission of COVID-19 may vary depending on environmental conditions—and that the oft-repeated six-feet rule may not be sufficient in a high-risk environment, such as indoor settings with prolonged exposure." *See, e.g.*, *Joffe v. King & Spalding, LLP*, No. 17-CV-3392 (VEC), 2020 WL 3453452, at *7, n.10 (S.D.N.Y. June 24, 2020) (citing Kimberly A. Prather et al., *Reducing transmission of SaARS-Co-V-2*, Science (May 27, 2020) ("Increasing evidence for SARS-CoV-2 suggests the 6ft. CDC recommendation is likely not enough under many indoor conditions where aerosols can remain airborne for hours, accumulate over time, and follow air flows over distances further than 6 ft."), https://science.sciencemag.org/content/early/2020/06/02/science.abc6197/1).[1] As discussed in *Joffe*, the "CDC guidelines do not suggest that the coronavirus magically decomposes or hits an invisible wall after traveling six feet in the air." *Id.* at *7. Therefore, individuals should still take extreme caution while in indoor spaces and should limit time spent with others.

The health concerns related to in-person depositions discussed in recent cases are bolstered by the facts set forth in the declaration from Defendant's counsel submitted in support of Defendant's motion. Counsel for Defendant include individuals at a higher risk for severe illness from COVID-19 due to existing health issues. (Doc. No. 128, Decl. of Nicole M. Moen in Supp. of Def.'s Mot. ("Moen Decl.") ¶ 13.) In addition, family

---

[1]     The print version of this article was issued on June 26, 2020. Kimberly A. Prather et al., *Reducing transmission of SaARS-Co-V-2*, 368 Science 1422 (June 26, 2020).

3

members of Defendant's counsel are also at a higher risk for severe illness. (*Id.*) Remote depositions are the best safeguard against COVID-19 because even "social distancing does not guarantee a safe deposition environment." *Grupo*, 2020 WL 4218804, at *2 (quoting *Joffe*, 2020 WL 345452, at *7).[2] Remote depositions "entirely 'eliminates' the safety concerns" of transmission between participants. *See Swenson v. Geico Cas. Co.*, No. 2:19-cv-01639-JCM-NJK, 2020 WL 4815035, at *5 (D. Nev. Aug. 19, 2020).

The Court has considered the facts and circumstances of this case, including the number of fact depositions, the December 11, 2020 fact discovery deadline, the nature of the case, and the risk of transmission of the virus in an in-person deposition setting. The Court has also employed the two-prong test discussed in *In Re Broiler Chicken Antitrust Litig.*, to arrive at its conclusion. *See In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7. The first prong requires there to be a legitimate reason for remote depositions. In this case, the Court concludes that reducing the risk of transmitting

---

[2]     Both sides assert that Minnesota Executive Orders, guidance from the Minnesota Judicial Branch, and this Court's General Orders govern this Court's decision. Even if they do govern in some respect, this Court does not find that these materials prohibit an in-person deposition altogether if warranted. With that said, there is no question that the District of Minnesota's General Order No. 18, effective through December 31, 2020, strongly encourages the use of video conferences for civil hearings, bench trials, and other proceedings. While the Court is cautiously opening to criminal motion hearings and jury trials, this is because there are no better alternatives. Here, there is a better alternative permitted by Rule. Federal Rule of Civil Procedure 20(b)(4) provides that the court, on motion, may order remote depositions in civil cases. The Court's General Order No. 18 therefore weighs in favor of Defendant's position.

4

COVID-19 during the pandemic is a legitimate reason for issuing an order to require remote depositions. Video depositions will help prevent the transmission of COVID-19 and ensure the health and safety of the witnesses and participants.

Because the Court finds the first prong satisfied for having all fact depositions in this case done remotely, the burden now shifts to the Plaintiffs, as the parties opposing an order for remote depositions, for consideration of the second prong. Under the second prong, Plaintiffs must show how they would be prejudiced if the depositions were to proceed by remote video conference. *See In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7.

The Court first addresses whether Plaintiffs have shown prejudice or hardship relating to any of the deponents already noticed, scheduled, or identified by the parties in their correspondence. With respect to each of these deponents, Plaintiffs have had notice and an ample opportunity to show hardship or prejudice relating to each of these depositions. The pandemic has temporarily redefined how law is practiced. "Attorneys and litigants all over the country are adapting to a new way of practicing law, including conducting depositions and deposition preparation remotely." *Grano v. Sodexo Mgmt.*, No. 18cv1818-GPC(BLM), 2020 WL 1975057, at *3 (S.D. Cal. Apr. 24, 2020). Here, Plaintiffs' counsel provided no indication in their papers or at the hearing that they were unable to proceed remotely or that any specific witness was unable to participate remotely; instead, counsel for both sides confirmed at the hearing that every deposition thus far has been taken remotely, with each participant, including the lawyers for each side, connecting from a remote location. Therefore, thus far, none of the required

5

participants have been in the same room during the depositions, as of the date of the hearing. According to the Defendant, while these depositions were different from being in-person, they went well. Plaintiffs did not rebut Defendant's assessment. This fact weighs heavily against the Plaintiffs' argument of hardship or prejudice.[3]

The Court recognizes that there may be advantages of in-person depositions under normal circumstances; however, due to the pandemic, "conducting depositions remotely is becoming the new normal." *Rouviere v. DePuy Orthopaedics, Inc.*, No. 1:18-cv-04814(LJL)(SDA), 2020 WL 3967665, at *3 (S.D.N.Y. July 11, 2020). Courts have "overwhelmingly endorsed depositions moving forward by remote means during the pandemic." *Swenson*, 2020 WL 4815035, at *3. Courts recognize that remote depositions promote the safest environment. "[D]epositions by videoconference have emerged as the preferred method of coping with the complications and perils this pandemic has wrought." *Faford v. Grand Trunk W. R.R. CO.*, No. 19-10523, 2020 WL 4890413, at *2 (E.D. Mich. July 28, 2020).

---

[3] In opposing a court order for remote depositions, Plaintiffs argue that remote depositions are most often used for a relatively brief examination that do not involve numerous documents. *See Shockly v. Huhtamaki, Inc.*, 280 F.R.D. 598, 601–02, n.14 (D. Kan. 2012) (citing Manual for Complex Litigation (Fourth) § 11.452 (2004)). But the case Plaintiff relies on cites a manual from 2004, and videoconferencing technology has developed significantly since then. Plaintiffs also rely on *Srebrik v. Dean*, No. 05-cv-0186-WYD-MJW, 2006 WL 2331014, at *1 (D.Colo. June 20, 2006) for the proposition that in-person depositions are the norm. But the remote technology to be deployed in *Srebrik* was a telephone. The new norm today has changed, and remote videoconferencing technology has been specifically tailored to the deposition setting.

Plaintiffs argue that if remote depositions are ordered, counsel will be deprived of the opportunity to question the witness in person. However, the option for remote depositions is provided by Rule 30(b)(4) and is a "'presumptively valid means of discovery' even without the in-person interaction." *Learning Res., Inc. v. Playgo Toys Enters., Ltd.*, No. 19-CV-00660, 2020 WL 3250723, at *3 (N.D. Ill. June 16, 2020) (quoting *Usov v. Lazar*, No. 13 Civ. 818, 2015 WL 5052497, at *2 (S.D.N.Y. Aug. 25, 2015)). Remote depositions are "by [their] nature . . . not conducted face to face." *Rouviere,* 2020 WL 3967665 at * 4. "If the lack of being physically present with the witness were enough prejudice to defeat the holding of a remote deposition, then Rule 30(b)(4) would be rendered meaningless." *Id.* Rule 30(b)(4) was created for legitimate situations where being in-person is not viable.

Further, since the promulgation of this rule, technology has improved such that counsel can observe witnesses rather closely; the size of the video display can be increased to further help counsel see the testifying witness better. Plaintiffs claim burden and hardship because the depositions may be document intensive. The current technology, however, can be adapted to allow for documents to be displayed along with a view of the witness, and courts have "found that exhibits can be managed in remote depositions by sending Bates-stamped exhibits to deponents prior to the depositions or using modern videoconference technology to share documents and images quickly and conveniently." *Grupo*, 2020 WL 4218804, at *3 (quotations omitted). A "document laden" or "document intensive" deposition is therefore "not an obstacle to a successful remote videoconference deposition." *Rouviere*, 2020 WL

7

396766 at *3. In addition, there are many resources available from vendors and through the legal community to assist counsel in preparing for remote depositions. *Id.* Thus, Plaintiffs have presented no specific concerns for the participants that cannot be overcome, and Plaintiffs have not met their burden under the second prong of the analysis—considering prejudice or hardship to Plaintiffs relating to the deponents already noticed, scheduled, or identified by the parties—to deny Defendant's request for remote depositions.[4] *See In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *4 ("Technological problems can arise during in-person as well as remote depositions, but that is not a reason to prevent remote depositions from occurring.").

Plaintiffs argue that they should have the option to be in the same room with their individually named clients or any willing third-party witness while the deposition is taken. Even in those situations, Plaintiffs have made no showing of prejudice or hardship to counsel that cannot be overcome when participating remotely along with

---

[4] Plaintiffs also take the position that Defendant's health concerns about in-person depositions can be addressed by permitting Defendant's counsel to "remote in" to the in-person deposition. But that is not the inquiry before the Court. The inquiry is whether Plaintiffs have established any prejudice or hardship to Plaintiffs for everyone to appear remotely. Further, the vague hybrid approach offered by Plaintiffs is not justified, especially when considering the record before the Court. As presented, the Court agrees with Defendant's counsel that this hybrid approach would be unfair to Defendant. With that said, with respect to any witnesses who have not yet been identified, if there are special circumstances that require Plaintiffs' counsel to be in person to defend a particular witness, this Order provides an opportunity to meet and confer and present any hardship or prejudice to the Court that might warrant modifications to the deposition setting.

all other participants. While the Court appreciates the role of counsel in defending a witness during a deposition, counsel's role during a deposition is limited. Defense counsel can carefully listen to questions and make appropriate objections, and they can still do this remotely. The parties are encouraged to develop protocols to address any concerns with the process for making objections or instructing a witness not to answer. For example, other courts have addressed the issue of how to allow for a witness to pause before answering questions when being deposed remotely to allow for their attorney to consider whether to lodge any objections. *See In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *4, n.3.[5] Further, remote deposition protocol can provide for more frequent breaks if needed, and counsel can connect with their clients or witnesses in a private virtual "breakout room" or by a separate remote connection during those breaks.[6] Therefore, the Court concludes that, with respect to the fact

---

[5] In *In re Broiler Chicken Antitrust Litig.*, the court described the process as follows:

> [T]o guard against a witness answering a question when the technology prevents the witness's counsel, who like the witness is participating in the deposition remotely and from a different location, from lodging an objection or instructing the witness not to answer the question, the parties might consider adopting a convention that would allow a witness to answer a question only after the lawyer defending the deposition says the witness can answer. A simple, "you may answer" would suffice. The Court is confident the parties can come up with other conventions that can make the taking and defending of remote deposition more palatable.

2020 WL 3469166, at *4, n.3.

[6] Nothing in this order on remote depositions should be construed to order or set any requirements for how witnesses are to be prepared by counsel or mandate the environment such preparation should be conducted in.

9

depositions identified to date, Plaintiffs have not made a particularized showing of hardship or prejudice, or provided other evidence of a need to proceed with in person depositions that outweigh the health risks created by the ongoing COVID-19 pandemic. *See Valdivia v. Menard Inc.*, No. 19 CV 50336, 2020 WL 4336060, at *2 (N.D. Ill. July 28, 2020) (denying defendant's motion to compel plaintiff's in-person deposition). Accordingly, with respect to the depositions noticed, scheduled, or identified in correspondence to date, they must be conducted remotely by video conferencing technology and none of the participants may be in the same room (in person with another participant), without further Order from this Court.[7]

The Court now turns to the issue of whether remote depositions should be ordered for all depositions, including depositions of witnesses not yet identified. As discussed above, the Court has found a legitimate reason to conduct all fact depositions through December 11, 2020 in this case remotely. However, the Court cannot rule on the second prong without giving a party or third party the opportunity to show hardship or prejudice with respect to a particular unidentified witness. Accordingly, the Court denies this part of Defendant's motion without prejudice.

The Court, however, will require the parties to immediately meet and confer to attempt to agree on (1) a protocol for taking remote depositions, and (2) a process for

---

[7] As mentioned earlier, for witnesses not yet identified, if there are special circumstances that require Plaintiffs' counsel to be in person to defend a particular witness, this Order provides an opportunity to meet and confer and present any hardship or prejudice to the Court that might warrant modifications to the deposition setting.

10

any future meet and confer on the hardship or prejudice alleged for a fact deposition that was not identified by the time of the hearing. The Court reiterates that it has already determined that there is a legitimate reason for remote depositions for all fact depositions (identified and not yet identified). Therefore, the first prong of the analysis is met as to all fact depositions. If the parties are unable to resolve any objections relating to a new witness, the opposing party must make a showing of hardship or prejudice to the Court to satisfy the second prong of the analysis.

For the remote deposition protocol, the parties must use the draft protocol in Defendant's Amended Proposed Order as the starting point. The parties must meet and confer no later than **two business days** after the entry of this Order, and they must file their proposed protocol by **September 21, 2020**. If the parties cannot agree on all provisions, they must present a joint submission, setting forth their respective positions in the body of the protocol document.

## ORDER

Based on the arguments of counsel and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Remote Depositions (Doc. No. 125) is **GRANTED IN PART** and **DENIED IN PART** consistent with the reasoning and rulings above. The motion is granted in part as to any fact deposition identified as of the date of the hearing, and denied in part without prejudice as to any fact deposition not yet identified as of the date of the hearing.

Dated: September 14, 2020						*s/ Becky R. Thorson*
								BECKY R. THORSON
								United States Magistrate Judge